IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KARRIS A. BILAL,                          )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )      No. 06 C 6978
                                          )
MARCIAL TOPPER WOLF, individually         )
and in her official capacity              )
with the Illinois Attorney                )
Registration and Disciplinary             )
Commission, and DAWN M.                   )
LAWKOWSKI, in her official                )
capacity with the Cook                    )
County Public Guardian,                   )
                                          )
                    Defendants.           )

## OPINION AND ORDER

At the time plaintiff Karris Bilal ("plaintiff" or "Bilal") filed his Amended Complaint, proceedings to suspend him from practicing law in Illinois were pending. Proceedings in this case were stayed pending resolution of the suspension proceedings. In an order dated January 20, 2009, the Illinois

Supreme Court upheld the determination of the Illinois Attorney
Registration and Disciplinary Commission's ("ARDC") Review
Board that Bilal's law license be suspended for 18 months.
Thereafter, the stay was lifted and a briefing schedule was
set on defendants' motions to dismiss.  This case was reassigned
to this bench.

Named as defendants, in their individual and official
capacities, are Marcia Wolf, the ARDC attorney who initially
prosecuted[1] the ARDC charges against Bilal, and Dawn Lawkowski,
an attorney for the Cook County Public Guardian, who had opposed
Bilal in litigation and reported an alleged ethical violation to
the ARDC.  Plaintiff claims that defendants denied him a fair
hearing in violation of constitutional due process by presenting
false information at his ARDC hearing and interfering with his
ability to present evidence.  He also claims that Wolf violated
his Fourth Amendment rights (as applied to the states through the
Fourteenth Amendment) by conducting a credit inquiry as part of

---

[1]Wolf represented the ARDC Administrator before the
ARDC's Inquiry Board and Hearing Board.  The Inquiry Board
determines whether a complaint will be filed and the Hearing
Board hears and decides the merits of the complaint.  Consistent
with the ARDC's standard practice, a different ARDC attorney
represented the Administrator on appeal before the Review Board
and Illinois Supreme Court.

her prosecution and by disclosing to witnesses in the ARDC proceeding information about Bilal. Plaintiff also brings supplemental state law tort claims against both defendants.

In Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009), the Supreme reiterated the pleading standards that are applicable in federal court following the Supreme Court's ruling in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Contrary to plaintiff's contention, this standard is not limited to claims against high government officials involving national security concerns. See Iqbal, 129 S. Ct. at 1953 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. 550 U.S., at 554. That Rule in turn governs the pleading standard 'in all civil actions and proceedings in the United States district courts.' Fed. Rule Civ. Proc. 1. Our decision in Twombly expounded the pleading standard for 'all civil actions,' ibid., and it applies to antitrust and discrimination suits alike."); Fulk v. Village of Sandoval, 2009 WL 1606897 *1 (S.D. Ill. June 9, 2009); PTR, Inc. v. Forsythe Racing, Inc., 2009 WL 1606970 *2 (N.D. Ill. June 9, 2009). The Seventh Circuit applies a type of sliding scale

approach to pleading a plausible claim.  The more complex the

case and more costly potential discovery, the more detail that

will be required to satisfy the plausibility requirement.

Tamayo v. Blagojevich, 526 F.3d 1074, 1082-83 (7th Cir. 2008);

Limestone Dev. Corp. v. Village of Lemont, Ill., 520 F.3d 797,

803-04 (7th Cir. 2008).

As long as consistent with the allegations of his Amended

Complaint, plaintiff may assert additional facts in his response

to the motion to dismiss.  Brokaw v. Mercer County, 235 F.3d

1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex,

199 F.3d 363, 368 (7th Cir. 2000); Williams v. Macklin, 2008 WL

4696136 *3 (N.D. Ill. Oct. 23, 2008); Warren v. Peterson, 2008 WL

4411566 *1 (N.D. Ill. Sept. 25, 2008).  In addition to the facts

alleged in the Amended Complaint, the court may consider

judicially noticed facts, including certified records of court

and governmental proceedings.  See Anderson v. Simon, 217 F.3d

472, 474-75 (7th Cir. 2000); Menominee Indian Tribe of Wis. v.

Thompson, 161 F.3d 449, 456 (7th Cir. 1998); Bartoli v. ARDC,

1998 WL 100246 *1 n.1 (N.D. Ill. Feb. 24, 1998), aff'd by

unpublished order, 202 F.3d 272 (7th Cir. 1999); Pope v. City of

Chicago, 2009 WL 811625 *1 (N.D. Ill. March 24, 2009); Trustees

of Local 734 Bakery Drivers Health & Welfare Plan v. Wolff, 537
F. Supp. 2d 951, 954 (N.D. Ill. 2008); In re Cole, 378 B.R. 215,
219-20 (Bankr. N.D. Ill. 2007).  Judicial notice is taken of the
rulings in Bilal's ARDC disciplinary proceedings, certified
copies of which are provided by defendant Wolf.

Under federal pleading rules, plaintiff is not limited to
nor bound by the legal characterizations of his claims contained
in the Amended Complaint.  A claim can survive as long as the
facts alleged would support relief.  Forseth, 199 F.3d at 368;
Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041
(7th Cir. 1999); LaRoe v. Cassens & Sons, Inc., 472 F. Supp. 2d
1041, 1047 (S.D. Ill. 2006).  In response to a motion to dismiss,
though, the legal basis for a claim must be identified and a
sufficient legal argument made in support of it.  Kirksey,
168 F.3d at 1041-42; Lekas v. Briley, 405 F.3d 602, 614-15
(7th Cir. 2005); Hays v. Bardasian, ___ F. Supp. 2d ___, ___,
2009 WL 1299578 *2 (N.D. Ind. May 8, 2009); Pope, 2009 WL
811625 at *2; Cooney v. Rossiter, 2008 WL 3889945 *12 (N.D. Ill.
Aug. 20, 2008).

The following facts are before the court on defendants'
motions to dismiss.  Plaintiff is an African-American man and a

licensed attorney.  He describes his practice as "focused on foreclosure defense and fighting for other basic rights of working class Americans."  Am. Compl. ¶ 8.

In 2004, plaintiff was representing his stepmother, Rachelle Bilal ("Rachelle"), in a probate court proceeding seeking to have Rachelle appointed as the guardian of the estate and person of Georgia Hodges, Rachelle's elderly aunt.[2]  In 2003,

---

[2]The body of plaintiff's Amended Complaint does not allege all the background facts regarding the probate proceeding. However, the Amended Complaint references other documents, including exhibits to plaintiff's original Complaint, in which plaintiff alleges or admits to certain basic facts about the probate proceeding.  Also, in response to the motion to dismiss, plaintiff does not dispute certain basic facts regarding the related proceedings.  Additionally, the rulings in Bilal's ARDC disciplinary proceeding include findings about the probate proceeding.  As to factual matters, the ARDC rulings are only being considered to determine what happened in the ARDC proceedings and what the grounds and factual basis of the rulings were.  Defendants both assert that the ARDC decision should be accorded a res judicata (claim preclusion) effect, though Lawkowski makes no argument as to whether she, individually or in her official capacity, qualifies as being in privity with the ARDC Administrator.  See In re Dollie's Playhouse, Inc., 481 F.3d 998, 1001 (7th Cir. 2007) (identity of parties or their privies is an essential element for applying res judicata based on an Illinois judgment).  As to res judicata, defendants also ignore that the ruling was in Bilal's favor regarding the accusation that he was knowingly or intentionally involved in any improper appropriation of Hodges's funds and ignore that Bilal could not bring a claim for damages in the ARDC proceedings.  In any event, neither defendant makes any assertion or argument that the factual findings in the ARDC proceedings should be accorded a collateral estoppel (issue preclusion) effect.  Even if res judicata applies, it only precludes bringing certain claims; res judicata does not establish any facts.

Hodges had signed a statutory short form power of attorney for property prepared by Rachelle and appointing Rachelle as her agent ("2003 POA"). In 2004, relying in part on the 2003 POA, plaintiff prepared a durable power of attorney appointing Rachelle to act on behalf of Hodges ("2004 DPOA"). Plaintiff did not meet with Hodges. Rachelle had Hodges sign the 2004 DPOA. Plaintiff also prepared a living trust for Hodges appointing Rachelle as the trustee. Based on the 2003 POA, Rachelle signed the living trust documents on behalf of Hodges. Plaintiff also prepared documents and acted as the attorney for the trust in effecting the sale of Hodges's home. Plaintiff was paid for preparing the living trust and representing the seller in the closing of the sale of Hodges's home. Plaintiff did not advise Rachelle regarding what to do with the proceeds of the sale.

In the 2004 probate proceeding, the Public Guardian's office, represented by Lawkowski, opposed the appointment of Rachelle as Hodges's guardian. In this proceeding, Bilal represented Rachelle in her attempt to be appointed guardian. The Public Guardian took the position that a substantial portion of the proceeds from the house sale were used for Rachelle's benefit to make improvements at Rachelle's own residence.

Rachelle contended funds from Hodges's home sale and the living trust were used to make improvements so Hodges could live with Rachelle. Rachelle opposed the Public Guardian's plan to place Hodges in a nursing home. Plaintiff alleges, and the ARDC found, that, even if Rachelle improperly appropriated funds,[3] he did not participate in the misappropriation and was unaware of the impropriety.

In the probate proceeding, it was suggested to the court that Bilal had a conflict of interest in that his then-client Rachelle had interests potentially adverse to Hodges, who had been Bilal's client when he prepared a living trust for Hodges. The Probate Court did not order that Bilal withdraw from the case. At some point during a break in the proceeding, Lawkowski told plaintiff that it would behoove him not to oppose the Public Guardian's position. Bilal understood this to be a threat to harass and intimidate him if he continued to press the position of his then-client, Rachelle. Bilal, nevertheless, continued to represent Rachelle and seek to have her appointed as Hodges's guardian.

_____

[3]Plaintiff also presently contends that there was no actual impropriety by Rachelle.

On August 17, 2004, while the probate proceeding regarding Rachelle's appointment was pending, Lawkowski sent a letter to Wendy Muchman, senior counsel of the ARDC. In that letter Lawkowski indicated that Rachelle had misappropriated funds and made false statements in support of her petition and that Bilal was aware of this. It was also suggested that Bilal had a conflict of interest in representing Rachelle. Plaintiff asserts in the Amended Complaint that addressing the letter to Muchman instead of "directly to the A.R.D.C. for assignment" was "improper and uncustomary." This allegedly allowed Muchman to assign Bilal's ARDC case to Wolf instead of the usual random assignment procedure. Am. Compl. ¶¶ 15-16. However, in the Amended Complaint and in response to the motion to dismiss, plaintiff cites no ARDC rule or regulation to support this legal contention.

Additionally, plaintiff conclusorily alleges that Lawkowski acted improperly by freezing Rachelle's personal bank account and providing information that caused Rachelle to be arrested for alleged financial impropriety regarding Hodges. Lawkowski allegedly did this to pressure Bilal to stop representing Rachelle.

A three-count ARDC complaint was brought against Bilal. Count I alleged Bilal failed to report on his bar application an arrest for which the charges had been promptly dropped and the arrest record expunged. Count II alleged impropriety in preparing the living trust and 2004 DPOA for Hodges and committing a breach of fiduciary duty. Count III alleged a violation of conflict of interest rules for Bilal having represented Rachelle in the probate proceeding even though Rachelle had a conflict of interest with Bilal's former client Hodges. After discovery was conducted, a hearing on the charges was held before the ARDC Hearing Board. Defendant Wolf investigated Bilal's conduct and prosecuted the charges on behalf of the ARDC Administrator. In a report and recommendation dated March 21, 2007, the Hearing Board found violations alleged in Counts I and III and recommended that Bilal's law license be suspended 18 months and that Bilal be required to complete the Illinois Professional Responsibility Institute course. There was no finding of dishonesty on the part of Bilal. Both sides filed exceptions. In a report and recommendation dated September 5, 2008, the ARDC Review Board upheld the Hearing Board's findings and recommendation. Both sides again filed exceptions. In an

order dated January 20, 2009, the Illinois Supreme Court denied

both sides' exceptions and imposed the recommended discipline,

with Bilal's license being suspended effective February 10, 2009.

As to Wolf's misconduct before the Hearing Board,

plaintiff alleges:

> 18.  Wolf knowingly and intentionally acting
> outside the scope of her duties, disclosed highly
> privileged A.R.D.C. information to Lawkowski
> and others, then attempted to cover up her
> inexplicable conduct by acting in concert with
> Lawkowski and others to cause official court
> transcripts to be altered.
> 19.  More precisely, Wolf secretly held a
> private meeting with Lawkowski, Thomas Brennan,
> Charles Perez Golbert, and Joan Stewart--whereby
> all met in the same room and at the same time
> with Wolf, who deliberately discussed and
> divulged highly privileged A.R.D.C. information
> concerning Plaintiff--for the purpose of
> concocting lies to enable Wolf to wrongfully and
> unlawfully deprive Plaintiff of his license to
> practice law, harass Plaintiff and his family,
> and damage Plaintiff economically.
>
> *  *  *
>
> 21.  Wolf inexplicably conducted an
> unauthorized and unlawful search of Plaintiff's
> personal credit, then divulged said information
> to Lawkowski and others outside the A.R.D.C.

Am. Compl. ¶¶ 18-19, 21.  The persons listed in ¶ 19 were

witnesses before the Hearing Board, except Golbert, who was an

attorney for the Public Guardian.  See Pl. Answer Br. [126] at 5.

It is also alleged that Wolf filed a "frivolous complaint" against Bilal in which she "intentionally and maliciously disclosed privileged A.R.D.C. information" to give the false perception that Bilal had actually committed the misconduct that was the basis for his arrest that had been expunged. Id. ¶ 23. Further, it is alleged: "There is statistical and other data that supports a finding that Wolf and other investigators of the A.R.D.C. use the A.R.D.C. to perpetuate their own invidious discriminatory purposes against African-American attorneys." Id. ¶ 24.[4]

In a discovery deposition taken prior to the hearing before the Hearing Board, Lawkowski allegedly "made false statements under oath concerning her private meeting with Wolf." Id. ¶ 22.

It is also alleged:

> 33. Wolf and Lawkowski intentionally and deceptively withheld the truth and made false statements to Plaintiff and others, which Plaintiff relied upon to his detriment. For instance, Wolf and Lawkowski falsely stated to Plaintiff that they were simply seeking the truth, but intentionally and deceptively withheld the truth, and even worse lied to others

---

[4]In response to the motions to dismiss, plaintiff does not argue that he is bringing or has adequately alleged an equal protection violation.

concerning Plaintiff's involvement in the alleged
theft from an elderly person, [which] both Wolf
and Lawkowski knew or should have known (with any
investigation) was false.

Id. ¶ 33.

Additionally, it is alleged:  "That one of Plaintiff's
clients states that they [sic] were approached by an individual
who offered them [sic] money if they [sic] lied about matters
concerning Plaintiff's representation of client."  Id. ¶ 30.  It
is not actually alleged that this is a fact, only that one of
plaintiff's clients so states.  Also, there is no allegation as
to who offered the money nor an express allegation that Wolf
and/or Lawkowski were behind any such offer.

There is no allegation in the Amended Complaint that
Bilal is presently being investigated for further violations of
ARDC disciplinary rules.

In his answer to the motions to dismiss [126] at 5-7,
plaintiff also recites various rulings that he contends were
procedural errors.  He complains that a key witness regarding
Count I of the ARDC complaint--Kim Petrisha--was not disclosed
until shortly before the hearing; a medical doctor telephonically
testified regarding Hodges's mental capacity, but was not under

oath; Rachelle was precluded from testifying because she declined to testify at a deposition; and Bilal received the ARDC's exhibits on the day the hearing began. The Review Board considered these contentions and upheld the Hearing Board's rulings.

Plaintiff denominates six counts. Except for Count II, he seeks damages and injunctive relief against both defendants and does not distinguish between relief sought in defendants' individual and official capacities. Count I is labeled as a Fourth and Fourteenth Amendment violation. Count III is labeled as a violation of 42 U.S.C. § 1983 and § 1985. Count II is labeled as a violation of 18 U.S.C. §§ 241, 242, and 245. No damages or injunctive relief are requested in Count II's addendum. Instead, in this count it is requested that the court refer Wolf and Lawkowski to the United States Attorney's Office for investigation and prosecution. Counts IV, V, and VI are labeled as state law claims for, respectively, civil conspiracy, fraud, and slander.

The Amended Complaint itself does not specifically identify the constitutional violations alleged in Counts I and III other than being violations of the Fourth and Fourteenth

Amendment. In response to the motions to dismiss, plaintiff argues that defendants' conduct denied him due process and it is indicated that the Fourth Amendment violation consists of searching his credit information and disclosing private information to the witnesses. These are the only possible constitutional violations that will be addressed as being raised in the Amended Complaint. See Kirksey, 168 F.3d at 1041-42; Lekas, 405 F.3d at 614-15; Hays, ___ F. Supp. 2d at ___, 2009 WL 1299578 at *2; Pope, 2009 WL 811625 at *2; Cooney, 2008 WL 3889945 at *12. Also, in response to the motion to dismiss, plaintiff clarifies: "This action was not filed because Wolf and Lawkowski made questionable judgments regarding reporting, investigating, and prosecuting frivolous claims against the Plaintiff. Instead, the Defendants have been brought into this action because they altered official court transcripts and engaged in all the other clearly unlawful and unethical conduct alleged in Plaintiff's Amended Complaint, which deprived the Plaintiff of a fair hearing and process." Pl. Answer Br. [126] at 10.

The ARDC, Johnson v. Supreme Ct. of Ill., 165 F.3d 1140, 1140-41 (7th Cir. 1999), and Cook County Public Guardian,

<u>Young v. Murphy</u>, 1994 WL 721204 *5 (N.D. Ill. Dec 28, 1994),

<u>aff'd in part, rev'd in part on other grounds</u>, 90 F.3d 1225

(7th Cir. 1996), are part of the Illinois court system and, as

such, are arms of the state protected by the Eleventh Amendment.

Therefore, plaintiff cannot bring damages claims against

defendants in their official capacities. The Eleventh Amendment

does not preclude injunctive relief against defendants in their

official capacities. <u>Powers v. Snyder</u>, 2009 WL 856160 *8

(C.D. Ill. March 26, 2009); <u>Job v. Illinois Dep't of Human Serv.</u>,

2009 WL 255596 *4 (N.D. Ill. Feb. 2, 2009). Plaintiff, however,

lacks standing to seek prospective injunctive relief. There is

no allegation that he is presently under ARDC investigation for

further violations of applicable rules. The official capacity

claims will be dismissed as well as the request for injunctive

relief.

Plaintiff contends he was denied due process in that Wolf

and Lawkowski acted in concert to present false evidence. He

also asserts that he was denied a fair opportunity to cross-

examine Petrisha and to present witnesses on his own behalf. The

latter issues, however, are rulings of the Hearing Board, not

attributable to Wolf or Lawkowski individually. It is doubtful

that these evidentiary rulings rose to the level of a

constitutional violation.  In any event, as was held regarding

plaintiff's motion to preliminarily enjoin the suspension of his

law license, this court has no authority to directly review the

suspension of his license, see Order dated March 19, 2009 [120]

(citing District of Columbia Ct. of App. v. Feldman, 460 U.S. 462

(1983); Johnson, 165 F.3d at 1141-42; Levin v. ARDC, 74 F.3d 763

(7th Cir. 1996)), and, as held above, the Eleventh Amendment bars

a damages claim against the ARDC.  The Eleventh Amendment bar as

to a damages claim against the ARDC applies whether based on

Wolf's alleged conduct, the rulings of the ARDC boards, or the

ruling of the Illinois Supreme Court.

　　As to the damages claims against her, Wolf invokes

prosecutorial immunity.  The Seventh Circuit has held that

prosecutorial immunity applies to those prosecuting attorney

disciplinary proceedings.  See Kissell v. Breskow, 579 F.2d 425,

430 (7th Cir. 1978); Bartoli v. ARDC, 1998 WL 100246 *3

(N.D. Ill. Feb. 24, 1998), aff'd by unpublished order, 202 F.3d

272 (7th Cir. 1999).  This is an absolute immunity against

damages claims, including claims based on presenting falsified or

unreliable evidence.  Buckley v. Fitzsimmons, 20 F.3d 789, 795

(7th Cir. 1994); <u>Stein v. Disciplinary Bd. of Sup. Ct. of N.M.</u>, 520 F.3d 1183, 1193-94 (10th Cir. 2008); <u>Smith v. Blust</u>, 2008 WL 4414506 *1 (C.D. Ill. Sept. 22, 2008). The absolute immunity also applies to the Fourth Amendment claim against Wolf that she improperly disclosed witnesses information from Bilal's ARDC file and his credit report because preparing witnesses for a hearing is a prosecutorial function protected by prosecutorial immunity. <u>See Stein</u>, 520 F.3d at 1194. All the damages claims against Wolf will be dismissed.

Still to be addressed is the damages claim against Lawkowski based on her alleged falsification of information regarding Bilal being involved in improperly taking funds from Hodges. Lawkowski cites a court rule and case law supporting that there is a state law immunity from civil damages for persons, particularly attorneys who are obligated to report the misconduct of other attorneys, who report alleged violations of the Rules of Professional Conduct to the ARDC or other governmental bodies. <u>See</u> Ill. S. Ct. R. 775 ("Any person . . . who communicates a complaint concerning an attorney to the Attorney Registration and Disciplinary Commission, or its administrators, staff, investigators or any member of its boards,

shall be immune from all civil liability which, except for this rule, might result from such communications or complaint. The grant of immunity provided by this rule shall apply only to those communications made by such persons to the Attorney Registration and Disciplinary Commission, its administrators, staff, investigators and members of its boards."); Moseley v. Berg, 2001 U.S. Dist. LEXIS 3089 *8-9 (N.D. Ill. March 12, 2001) (applying Rule 775);[5] Lykowski v. Bergman, 299 Ill. App. 3d 157, 700 N.E.2d 1064, 1071 (1st Dist. 1998) (privileged communication for state law defamation claim); Weber v. Cueto, 209 Ill. App. 3d 936, 568 N.E.2d 513, 517-20 (5th Dist. 1991) (same). State law immunities, however, do not apply to federal constitutional claims. Haywood v. Drown, 129 S. Ct. 2108, 2115 n.5 (2009); Monell v. Department of Soc. Serv. of City of N.Y., 436 U.S. 658, 695 n.59 (1978). An immunity for reporting misconduct to an

---

[5]Kevin Moseley and Richard Husted were plaintiffs and K.O. Johnson was one of the defendants in the cited Moseley case. Husted had been Moseley's attorney in a child support case and Johnson represented the mother. Johnson had sent a letter to the ARDC alleging an ethical violation by Husted in the child support case. In the Moseley case, Count II was a claim that this letter was written "maliciously for the purpose of disbarring Husted and depriving Moseley of an attorney." Moseley, 2001 U.S. Dist. LEXIS 3089 at *3. There is no indication that Count II was a federal constitutional claim. Count II was dismissed on the ground that Rule 775 barred civil liability.

attorney disciplinary body bars the constitutional claim against Lawkowski only if federal common law recognizes such an immunity.

Federal common law recognizes an immunity for witness testimony in judicial proceedings.  This immunity applies to both criminal and civil proceedings.  See Briscoe v. LaHue, 460 U.S. 325 (1983); Meyers v. Contra Costa County Dep't of Soc. Serv., 812 F.2d 1154, 1156 (9th Cir. 1987).  As with prosecutorial immunity, witness immunity has also been held applicable to testimony under oath in administrative proceedings.  See Blount v. Swiderski, 2006 WL 3314635 *16 (E.D.N.Y. Nov. 14, 2006) (workers' compensation proceeding); Thompson v. Administrative Office of the Sup. Ct. of App. of W. Va., 2004 WL 3266044 *10 (S.D.W. Va. Dec. 6, 2004), aff'd by unpublished order, 122 F. App'x 643 (4th Cir. 2005) (EEOC administrative proceeding); Ankele v. Hambrick, 286 F. Supp. 2d 485, 498 n.6 (E.D. Pa. Oct. 8, 2003), aff'd by unpublished order, 136 F. App'x 551 (3d Cir. 2005) (suspension of driver's license hearing); Cignetti v. Healy, 967 F. Supp. 10, 14 (D. Mass. 1997) (firefighter's civil service disciplinary hearing).  See also Butz v. Economou, 438 U.S. 478, 512 (1978) ("Absolute immunity is thus necessary to assure that judges, advocates, and witnesses

can perform their respective functions without harassment or
intimidation.")  The immunity extends to testimony at pretrial
proceedings, including depositions.  See Moore v. McDonald,
30 F.3d 616, 619-20 (5th Cir. 1994); Myles v. Laterzo, 2009 WL
1437574 *8 (N.D. Ind. May 20, 2009); Mayes v. City of Hammond,
Ind., 442 F. Supp. 2d 587, 624 (N.D. Ind. 2006), reconsideration
denied, 2006 WL 2193048 (N.D. Ind. Aug. 1, 2006).  The conduct of
witnesses during pretrial witness preparation is immunized, and
particularly pertinent to this case, conspiring with the
prosecutor to present perjured testimony is also immunized.  See
Manning v. Miller, 355 F.3d 1028, 1032 (7th Cir. 2004);
Newsome v. McCabe, 319 F.3d 301, 304 (7th Cir. 2003).  There is a
complaining-witness exception to immunity that could possibly
apply to Lawkowski.  See Gauger v. Hendle, 349 F.3d 354, 358
(7th Cir. 2003).  In response to the motion to dismiss, however,
plaintiff expressly disclaims that his claim against Lawkowski is
based on her reporting misconduct to the ARDC.  Instead, he
limits his claim to her conduct during the ARDC proceedings that
allegedly deprived him of a fair hearing and process.  As
discussed above, such alleged conduct, even if dishonest and

reprehensible, is protected by the witness immunity. The damages claims against Lawkowski will be dismissed.[6]

Still to be addressed is the Count II claim seeking a referral for prosecution. Plaintiff cites no law supporting that a claim to have the district court refer a case for prosecution is cognizable. As a general matter, a victim of a crime does not have standing to seek the prosecution of the person who committed the offense. See Linda R.S. v. Richard D., 410 U.S. 614 (1973). Also, a private citizen has no standing to initiate a criminal prosecution. See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989); Lundy v. United States, 2007 WL 4556702 (C.D. Ill. Dec. 21, 2007), modified, 2008 WL 2510172 (C.D. Ill. June 19, 2008). Count II will be dismissed for lack of subject matter jurisdiction. Plaintiff is free to report, to the appropriate law enforcement or prosecuting authority, any crime he believes has been committed.

---

[6]No opinion is expressed regarding other issues raised by defendants such as the applicability of res judicata, whether plaintiff has alleged sufficient facts to support a plausible claim, and whether, to the extent plaintiff has sufficiently alleged any claims, the law supporting such claims was clearly established as of 2004 so that qualified immunity would not apply.

Since all the federal claims are being dismissed, the state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  See 28 U.S.C. § 1367(c)(3).

IT IS THEREFORE ORDERED that defendants' motions to dismiss [114, 116] are granted.  The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice except that Count II and plaintiff's state law cause of action are dismissed without prejudice for lack of subject matter jurisdiction.

ENTER:


_____
UNITED STATES DISTRICT JUDGE


DATED:  JUNE  25 , 2009